IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

TAMALA T. JONES                                                                                    PLAINTIFF

v.                              CASE NO.  4:22-CV-00545 BSM

LOGAN K. KULESA, et al.                                                                        DEFENDANTS

**PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION TO STRIKE**

I.     **Statement of Relevant Facts**

This case is scheduled for trial "sometime during the week of **February 24, 2025[.]**" *See Order, Doc. 21).* Pursuant to FED.R.CIV.P. 26(a)(2)(D)(i), the deadline to serve affirmative expert reports was November 26, 2024 (90 days prior to trial).

On October 31, 2024, in accordance with FED.R.CIV.P. 26(a)(2)(D)(ii), in response to Jack Ryan's expert report, Plaintiff served a rebuttal expert report issued by Ashley Heiberger. The expert report is dated October 31, 2024, and just above Mr. Heiberger's signature, Mr. Heiberger stated, "I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge." Mr. Heiberger requested payment in the amount of $6,475, which has been paid in full.

On November 20, 2024, in accordance with FED.R.CIV.P. 26(a)(2)(D)(i), Plaintiff served an expert report issued by David Balash. The expert report is dated November 19, 2024, and just above Mr. Balash's signature, Mr. Balash stated, "I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge." Mr. Balash requested payment in the amount of $4,000, which has been paid in full.

1

On November 26, 2024, Plaintiff filed a Response in Opposition to the Defendants' Motion for Summary Judgment. *(Docs. 31 & 32)*. On November 27, 2024, Defendants filed a Motion for Extension of Time to File Response/Reply. *(Doc. 33).*[1] On December 12, 2024, filed a Motion to Strike. (Doc. 35). This brief is filed in response to the Defendants' Motion to Strike.

II.   **Argument**

**A. Since 2010, an expert report signed under penalty of perjury does not constitute inadmissible summary judgment hearsay evidence.**

The Defendants argue that Ashley Heiberger and David Balash's expert reports constitute inadmissible summary judgment hearsay evidence. The Defendants are not correct. The law on this issue changed 15 years ago.

Specifically, in 2010, Rule 56 of the Federal Rules of Civil Procedure was revised to provide that an expert report signed under penalty of perjury does not constitute inadmissible hearsay. *See* FED.R.CIV.P. *56(c)(1)(A)(2024)* ("affidavits or declarations"); *Notes of Advisory Committee on 2010 amendments to* FED.R.CIV.P. *56* ("A formal affidavit is no longer required. 28 U.S.C. § 1746 allows a written unsworn declaration, certificate, verification, or statement subscribed in proper form as true under penalty of perjury to substitute for an affidavit.").

28 U.S.C. § 1746 (Unsworn declarations under penalty of perjury) provides in relevant part, the following:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration,

---

[1] In the Motion, the Defendants stated, "Counsel for the Plaintiff has been notified regarding this Motion and had not responded at the time of this filing." *Doc. 33 at ¶ 6.* Undersigned counsel has no record of receiving said notification.

2

certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

(2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
(Signature)".

*28 USCS § 1746(2)(2024)*. Both reports are signed, dated, and include the following declaration: ""I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge." As such, the Defendants' Motion that relies on an incorrect statement of the law should be denied.

### B. **Plaintiff's expert disclosures were timely served in accordance with the Federal Rules of Civil Procedure.**

The Defendants argue that they have suffered undue prejudice by Plaintiff's service of expert reports. For the reasons stated below, the Defendants' argument is disingenuous because the Defendants created the prejudice of which they now complain.

#### 1. **The Court's Scheduling Orders.**

On December 16, 2022, the Parties filed a Joint Rule 26(f) Report *(Doc. 9)*. In the Joint Report, the Parties requested that the Court set expert disclosure deadlines for dates after the close of fact discovery. *Id. at ¶ 14*. On December 19, 2022, the Court issued a Final Scheduling Order *(Doc. 10)* in which the Court did not set expert disclosure deadlines. *Id.*

On November 14, 2023, the Parties filed a Joint Motion to Amend the Amended Final Scheduling Order *(Doc. 11)*. On November 17, 2023, the Court issued an Amended Final Scheduling Order *(Doc. 13)* in which the Court did not set expert disclosure deadlines.

On March 26, 2024, the Parties filed a Joint Motion to Amend the Amended Final Scheduling Order *(Doc. 14)*. In the motion and proposed order, the Parties requested that the Court

3

set expert disclosure deadlines. *Id.* On March 29, 2024, the Court issued a Second Amended Final Scheduling Order *(Doc. 16)* in which the Court did not set expert disclosure deadlines. *Id.*

On July 16, 2024, the Parties filed a Joint Motion to Amend the Second Amended Final Scheduling Order *(Doc. 19)*. Recognizing the Court did not intend to set expert disclosure deadlines, the Parties did not request that the Court do so. *Id.* On July 16, 2024, the Court issued a Third Amended Final Scheduling Order *(Doc. 21)*. The Order set a trial date for "sometime during the week of February 24, 2025." *Id.* at ¶ *1*. The Order set a discovery deadline of October 2, 2024. *Id.* Regarding discovery, the Order provided in relevant part the following:

> The parties may conduct discovery beyond this date if all parties are in agreement to do so; but the Court will not resolve any disputes in the course of this extended discovery. All discovery requests and motions must be filed sufficiently in advance of that date to allow for a timely response. Witnesses and exhibits not identified in response to appropriate discovery may not be used at trial except in extraordinary circumstances. The Court will not grant a continuance because a party does not have time in which to depose a witness, expert or otherwise.

*Id.* at ¶ 2.

Despite multiple requests for the Court to do so, the Court did not set expert disclosure deadlines. The parties were forewarned that the deadlines would not be extended solely for the purpose of conducting depositions of witnesses or experts. With this warning, the Parties were free to stipulate to an expert disclosure schedule, but the parties did not do so. As such, the default expert disclosure schedule set by FED.R.CIV.P. 26(a)(2)(D) governs the issue.

### 2. **Defendants Appear to Be Acting in Bad Faith.**

At 5:08 PM EST, on October 2, 2024, the final day of discovery, Defendants served an expert report from Jack Ryan. *See Exhibit 1, Email.* If the Court were to adopt the Defendants' interpretation of the Court's Order – that despite not setting an expert disclosure schedule, expert discovery ended on October 2, 2024 – then the Court would also need to conclude that Defense

4

Counsel intentionally waited until after the close of business on the last day of discovery to serve an expert report, with the intention of creating a situation where Plaintiff could not serve a responsive expert report and could not conduct the expert's deposition.

### 3. Defendants ignored Plaintiff's offer to extend the summary judgment deadline until after expert disclosures were completed.

On October 2, 2024, at 3:04 PM, in an email following up on outstanding discovery, Plaintiff's Counsel stated, "I would like to discuss expert discovery deadlines." *See Exhibit 1*. As previously stated, at 5:08 PM, on the same date, Defense Counsel served an expert report from Jack Ryan. *See Exhibit 2, Email.* At 5:47 PM, on the same date, Plaintiff's Counsel served an email that stated, "Thank you. The expert rule provides a 30-day window for rebuttal reports, which I will have. Do you want to leave the motion deadline as is or extend?" *See Exhibit 3, Email.* Defense Counsel did not respond.[2]

Defense Counsel did not state that the Court's Order precludes service of an expert report. Defense Counsel did not state that the default disclosure schedule set by the Federal Rules did not govern. Defense Counsel did not state that Plaintiff's Counsel should not proceed to spend over $10,000 on experts. Defense Counsel did not state that the Defendants would be prejudiced if Plaintiff responds to the expert report served at the eleventh hour by the Defendants. Had Defense

---

[2] Notably, in the case of *Travon S. Brewer v. Michael T. Talley, No. 2:24-CV-00043 BSM* (prosecuted by undersigned and defended by the same legal office), during the conference of counsel on October 10, 2024 (before the Defendants filed a Motion for Summary Judgment in this case), counsel discussed the issue of expert disclosures and how the disclosure rule provided in FED.R.CIV.P. 26 would apply if the Court opted not to set such deadlines. Defense Counsel in that case commented that their office had another case with the same judge where the Court did not set an expert disclosure schedule. I advised that I was aware as I was prosecuting the case. Defense Counsel agreed that deferring to the default disclosure schedule set by the Federal Rules was not preferred. It is for that reason that the draft of the Joint Rule 26(f) Report *(Exhibit 4)* drafted by Defense Counsel in the *Brewer* case was revised to include a request that the Court set expert disclosure deadlines. *See Brewer, Doc. 12 at ¶ 5.*

Counsel stated any of the above, the issue would have been brought to the Court's attention before the summary judgment deadline.

Furthermore, Defense Counsel did not accept Plaintiff's Counsel's offer to simply extend the dispositive motions deadline to avoid any prejudice.

### 4. **Defense Counsel Acknowledged in the Joint Status Report that FED.R.CIV.P. 26(a)(2)(D) governed.**

On October 28, 2024, at 1:34 PM, Plaintiff's Counsel sent a follow up email stating, "Never heard back. Regardless, I believe that we have a status report due today. How would you like to handle?" *See Exhibit 3, Email.* Once again, instead of taking any of the above actions, Defense Counsel responded with a draft of the Joint Status Report and remained silent on the issue about which they now complain. *See id.*

On October 28, 2024, the Parties filed a Joint Status Report *(Doc. 22)*. In the Joint Report, the Parties advised the Court that on October 2, 2024, the Defendants served an expert report, and that "pursuant to FED.R.CIV.P. Rule [sic] 26(a)(2)(D)(ii), Plaintiff will be serving a rebuttal report." *Id. at ¶ 5.* Meaning, Defense Counsel literally acknowledged that FED.R.CIV.P. 26(a)(2)(D) governed. In the Joint Report, the Parties further advised the Court that the Defendants intended to file a Motion for Summary Judgement on the same date as the Joint Status Report. *Id. at ¶ 6.*

FED.R.CIV.P. 26(a)(2)(D) provides the following:

> (D) Time to Disclose Expert Testimony. A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made:
>
> > (i) at least 90 days before the date set for trial or for the case to be ready for trial; or
> >
> > (ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

6

Despite Defense Counsel knowing (1) the Court did not set an expert disclosure schedule, (2) the Parties did not stipulate to an expert disclosure schedule, (3) the Defendants acknowledged in the Joint Status Report that FED.R.CIV.P. 26(a)(2)(D) governed, (4) that Plaintiff intended to serve expert disclosures, (5) that FED.R.CIV.P. 26(a)(2)(D)(i) permits the service of expert reports up and until "at least 90 days before the date set for trial or for the case to be ready for trial," or on or before November 26, 2024, and (6) Plaintiff's Counsel consented to extending the dispositive motions deadline, instead of filing a motion to extend the dispositive motions deadline, on October 28, 2024, the Defendants filed a Motion for Summary Judgment *(Docs. 23-28)*.

Considering the above, Plaintiff respectfully requests that the Court deny the Defendants' Motion to Strike. To strike the Plaintiffs' expert reports at this juncture on these facts would cause Plaintiff to suffer undue prejudice. Plaintiffs spent over $10,000 on her experts. This case should be decided on the merits, not a procedural issue. And the prejudice claimed by the Defendants can be removed.

Pursuant to FED.R.CIV.P. 26(a)(2)(D)(ii), the deadline for Defendants to serve a rebuttal report expired on December 20, 2024. Regardless, to remove the prejudice of which the Defendants now complain, Plaintiff would be amendable to the Court providing the Defendants with an additional 30 days in which to serve a rebuttal expert report in response to the expert report issued by David Balash.

### C. Plaintiff's Expert, Ashley Heiberger, Did Not Opine on Legal Reasonableness or Credibility.

The Defendants argue that Mr. Heiberger is not qualified to render an opinion regarding how a properly training police officer would view the totality of the circumstances then confronted, and that his opinion is not tied to any methodology. The Defendants appear to have misread the report.

7

In the Background and Qualifications section of his report (pages 2-5), Mr. Heiberger devoted almost four pages to discussing/summarizing his qualifications. In addition, he provided a 12-page curriculum vitae detailing same. In the Methodology section of his report (pages 6-8), Mr. Heiberger explained the methodology used to reach his conclusions.

The Defendants argue that Ashley Heiberger's opinion should be limited in part because he supposedly opined on legal reasonableness and/or credibility. As clearly stated in his report, he did not. Specifically, in the Analysis and Opinion's section of his report (page 12), Mr. Heiberger explained,

> it should be noted that my analysis does not reach legal conclusions, i.e., I do not render an opinion regarding the legal reasonableness of the actions of Officer Kulesa, Officer Jones, and Sergeant Slash. Also, I address the federal Constitutional standards only to the extent that they inform and influence generally accepted police practices. Further, I acknowledge that a reasonable officer may rely upon agency policy and training when making decisions, when such training is based on policies that reflect the federal Constitutional standard.

Additionally, in the Methodology section of his report (pages 6-8), Mr. Heiberger explained,

> To further ensure my methodology was reliable, I did not assign credibility to any witness. I developed my understanding of relevant facts only after a review of all material provided, and I assumed those facts to be true solely for the purpose of analysis.

The Defendants argue that Ashley Heiberger's opinion should be limited in part because his opinion supposedly is not supported by training or generally accepted law enforcement practice. Again, it appears that the Defendants misread the report. In the Generally Accepted Law Enforcement Practices Regarding Use of Force section of his report (pages 14-15), Mr. Heiberger explained the generally accepted law enforcement practices and training that Defendants state are missing. And, in the Agency Policy Regarding Use of Force section of his report (pages 15-16),

Mr. Heiberger explained the policies and training provided to the police officers in this specific police department that Defendants state are missing from the report.

As previously discussed, in the Background and Qualifications section of his report (pages 2-5), Mr. Heiberger details his own training and professional experience that qualifies him to render the opinion in question. In the Methodology section of his report (pages 6-8), Mr. Heiberger explained the methodology used to reach his conclusions. In the Understanding the Facts section of his report (pages 8-11), Mr. Heiberger notes the facts on which his opinions rely. In the Analysis and Opinions section and the Foundational Provisions section of his report (pages 12-13) Mr. Heiberger explained how certain words in his opinion were being used, and the legal principles that a properly trained police officer would know. In the Generally Accepted Law Enforcement Practices Regarding Use of Force section of his report (pages 14-15), Mr. Heiberger explained the generally accepted law enforcement practices and training. And, in the Agency Policy Regarding Use of Force section of his report (pages 15-16), Mr. Heiberger explained the policies and training provided to the police officers in this specific police department.

How the totality of the circumstances would have appeared to reasonable police officers, is not a matter of common knowledge. As such, the opinions of qualified experts are regularly offered in litigation to provide the court and jury with an opportunity to view the totality of the circumstances through the lenses of properly trained and similarly experienced police officers.

Mr. Heiberger's report provides expert opinions from a well-qualified expert. The opinions were reached using a widely accepted methodology used by law enforcements experts in the federal courts. The opinions are supported by the facts of the case along with general standards in the industry. The "issues" that the Defendants raise are issues of weight and credibility that are

9

more appropriately argued at trial. Therefore, it is respectfully requested that the Court deny the Defendants' Motion.

### D. Pre-Seizure Conduct

While the Defendants are correct that the Eighth Circuit has held that pre-seizure conduct is generally not relevant to the use of force inquiry, the Supreme Court has not yet decided whether recklessly creating a situation that requires deadly force can itself violate the Fourth Amendment. *See City of Tahlequah, Oklahoma v. Bond, 211 L. Ed. 2d 170, 172-73 (2021) (per curiam)* ("We need not, and do not, decide . . . whether recklessly creating a situation that requires deadly force can itself violate the Fourth Amendment.") *see also Est. of Usaamah Abdullah Rahim v. Doe, Nos. 21-1086, 21-1087 (1st Cir. 2022)* (pre-seizure conduct may be relevant in the reasonableness analysis, we have done so in cases where there is a much closer connection between such conduct and the ultimate seizure). As such, it is respectfully requested that the Court deny the Defendants' Motion.

**WHEREFORE,** for the foregoing reasons, Plaintiff respectfully requests that the Court deny the Defendants' Motion to Strike *(Doc. 35)*.

**Respectfully submitted,**

Date: December 20, 2024            /s/ Devon M. Jacob
                                    **Devon M Jacob, Esquire**
                                    PA Bar No. 89182
                                    Jacob Litigation, Inc.
                                    P.O. Box 837, Mechanicsburg, Pennsylvania 17055
                                    717-796-7733 | djacob@jacoblitigation.com

                                    Benjamin L. Crump, Esquire
                                    FL Bar No. 72583
                                    Ben Crump Law, PLLC
                                    122 S. Calhoun Street, Tallahassee, Florida 32301
                                    850-224-2023 | court@bencrump.com

                                    *Attorneys for Plaintiff*