IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**TAMALA T. JONES, personally, and as the**                                          **PLAINTIFF**
**Administratrix of the ESTATE OF**
**TRAMON TYQUEZE SAVAGE**

**v.**                    **CASE NO. 4:22-CV-00545-BSM**

**LOGAN K. KULESA; SHAWN M. JONES;**
**and CITY OF JACKSONVILLE, ARKANSAS**                             **DEFENDANTS**

## ORDER

Defendants' motion for summary judgment [Doc. No. 23] is granted on plaintiff's municipal liability claim and denied on plaintiff's excessive force claim. Summary judgment is granted on plaintiff's survival liability and wrongful death claims against the City of Jacksonville, Arkansas and denied on her claims against Logan Kulesa and Shawn Jones. Defendants' motion to strike [Doc. No. 35] is denied. The clerk is directed to terminate the City of Jacksonville as a party.

### I. BACKGROUND

Jacksonville police officers were dispatched to a car dealership to investigate a burglary in progress call at approximately 11:56 p.m. on June 13, 2019. Defs.' Statement Undisputed Material Facts ¶ 1, Doc. No. 25 ("Defs.' SOF"). As he drove to the dealership, officer Logan Kulesa was flagged down by a woman in a gas station parking lot near the dealership. *Id.* ¶ 2. The woman informed Kulesa that she and her husband were members of the dealership's cleaning crew, that someone was trying to break into the dealership, and

that her husband had locked himself inside a closet in the dealership. *Id.* Kulesa then asked the woman to unlock the gate to the dealership, so he could enter its parking lot. *Id.*

When Kulesa parked in the dealership's parking lot at approximately 11:57 p.m., a man approached him and identified himself as the cleaning crew member whose wife had spoken to Kulesa at the gas station. *Id.* ¶ 3. The man advised Kulesa that no one was supposed to be in the building, and that when he heard someone banging inside the dealership building, he was frightened and hid in a closet. *Id.* The man told Kulesa that after he made sure no one was outside the closet, he fled the building. *Id.*

After Kulesa failed to locate anyone at the front of the building, the cleaning crew member walked him to the service department where he looked inside the window and saw the subject. *Id.* ¶ 4. The subject, later identified as Tramon Savage, was not wearing a shirt and he was attempting to start several vehicles. *Id.* ¶ 5.

About a minute later, Sergeant Robert Slash and officers Shawn Jones and Joshua Isom arrived. *Id.* ¶ 6. Slash did not know how many suspects were inside of the building, so he instructed Jones and Isom to assist Kulesa on the south side of the building while he covered the front of the building in case any suspects attempted to leave through the front. *Id.* ¶ 7.

Shortly thereafter, Kulesa observed Savage attempting to start a truck. *Id.* ¶ 9. Jones arrived at his location. *Id.* ¶ 10. Savage then exited the truck, walked over to the bay door, and pushed the button to raise the bay door. *Id.* ¶ 11. Kulesa and Jones walked to the open bay door. *Id.* ¶¶ 12–13. Before entering, Kulesa and Jones loudly identified themselves as

Jacksonville police. *Id.* ¶ 14; Pl.'s Resp. Defs.' Statement Facts & Pl.'s Statement Additional Facts ¶ 14, Doc. No. 31 ("Pl.'s SOF Resp."). Kulesa and Jones then entered the service area with their weapons drawn, and they commanded Savage multiple times to stop and show has hands. Defs.' SOF ¶ 16. Savage did not answer the officers nor did he respond to their commands. *Id.* ¶ 17.

Kulesa approached the driver's side of the truck in which Savage was sitting while Jones approached the passenger side. *Id.* ¶ 18. Savage then drove the truck forward in an apparent attempt to drive through the open service bay door. Pl.'s SOF Resp. ¶ 19. Jones moved out of the truck's way to the driver's side. *Id.* ¶ 20. Kulesa ended up on the passenger side, and at this point, Jones and Kulesa were on opposite sides of the truck and could not see each other. *Id.* Jones then observed the truck drive toward the last location where he had seen Kulesa and he perceived that the suspect was trying to run over him, so he began firing shots into the truck driver's side door. *Id.* ¶ 21. Kulesa heard a gunshot and did not know whether Savage or Jones fired the shot. Defs.' SOF ¶ 22. At that point, Kulesa believed Savage was going to run over him and that he had possibly just taken a shot at Jones. *Id.* ¶ 23. Consequently, Kulesa began firing shots through the passenger side door. *Id.* ¶ 24. Kulesa then started backing up, and the truck continued by him and crashed. *Id.*

Kulesa testified that he continued firing his gun after the truck crashed because he observed Savage leaning down towards the passenger seat floorboard and believed that Savage was attempting to grab something. Pl.'s SOF Resp. ¶ 25. Kulesa then saw Savage sit up with both of his hands partially in view. *Id.* Kulesa ran out of bullets and the officers

3

stopped firing. *Id.* ¶ 26. All of Kulesa's shots, including the one that may have killed Savage, were fired in under five seconds. David Balash Expert Rep. (Ballistics) 7, Doc. No. 31-2; *see* Defs.' Reply Pl.'s Resp. Defs.' Statement Undisputed Material Facts ¶ 69, Doc. No. 38 (questioning plaintiff's expert's conclusion that Kulesa fired the fatal shot).

After determining that the perceived threat was neutralized and that Savage was injured, the officers radioed for an ambulance and began to render medical aid. *See* Defs.' SOF ¶¶ 27–34. Savage died later that day. *Id.* ¶ 34.

Tamala Jones is suing personally and on behalf of her deceased son, Tramon Savage. Compl. ¶ 5, Doc. No. 1. Savage's mother brings the following claims: (1) an excessive force claim against officers Kulesa and Jones; (2) a municipal liability claim against the City of Jacksonville; (3) a state law survival claim against all defendants; and (4) a state law wrongful death claim against all defendants. *Id.* ¶¶ 83–115. Defendants move for summary judgment on all claims. Doc. No. 23.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in her pleadings. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial. *Id.* All reasonable inferences must

be drawn in a light most favorable to the non-moving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

### III. DISCUSSION

Defendants' motion for summary judgment is granted on plaintiff's municipal liability claim and denied on plaintiff's excessive force claim. Summary judgment is granted on plaintiff's survival liability and wrongful death claims against the city and denied on her claims against Kulesa and Jones. Defendants' motion to strike is denied.

A.  Excessive Force Claim

Summary judgment is denied on plaintiff's excessive force claim because there are genuine disputes of fact that must be resolved by a jury which preclude summary judgment based on qualified immunity.

Police officers are immune from suit unless they violate a clearly established constitutional or statutory right. *See Estate of Morgan v. Cook*, 686 F.3d 494, 496 (8th Cir. 2012). In determining whether an officer's use of force is constitutional, one must determine whether the force was objectively reasonable from the perspective of an officer on the scene. *See Loch v. City of Litchfield*, 689 F.3d 961, 965 (8th Cir. 2012) (citing *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)). In making this determination, courts consider the severity of the crime at issue, whether the suspect posed an immediate threat to the officer or others, and whether the suspect resisted or attempted to evade arrest. *See id.* Qualified immunity is

5

inappropriate when a genuine dispute exists concerning facts material to the issue of qualified immunity. *See Pace v. City of Des Moines*, 201 F.3d 1050, 1056 (8th Cir. 2000).

Plaintiff advances two main arguments as to why summary judgment should be denied. First, she says that the officers should be held liable for failing to plan their entry and intentionally placing themselves in jeopardy. Second, she says that the officers should have at least stopped firing their guns after the truck passed them, struck a wall, and came to a stop.

The first argument fails because the officers' decision to enter the open door to the service area with their guns drawn did not violate a clearly established right. Although some may disagree with the officers' initial decision, there was no constitutional violation. *See Schulz v. Long*, 44 F.3d 643, 648 (8th Cir. 1995) ("the reasonableness inquiry extends only to those facts known to the officer at the precise moment the officers effectuate the seizure"); *see also Khansari v. City of Houston*, 14 F. Supp. 3d 842, 857 (S.D. Tex. 2014) (allegations that the defendant officers failed to properly plan, evaluate, or gauge the situation were not sufficient to state a claim for violation of rights protected by the Fourth Amendment because these alleged failures neither constituted a seizure, nor a use of force that caused plaintiff to suffer an injury that was excessive to the need or objectively unreasonable).

The second argument, however, is enough to overcome summary judgment. This is true because whether it was objectively reasonable for the officers to believe that Savage posed a serious and immediate threat after the truck passed them, struck a wall, and came to a stop is in dispute. *See, e.g.*, Pl.'s SOF Resp. ¶¶ 19–21, 25; *see also Cole Estate of Richards*

*v. Hutchins*, 959 F.3d 1127, 1134 (8th Cir. 2020) ("a few seconds is enough time to determine an immediate threat has passed, extinguishing a preexisting justification for the use of deadly force"); *Ribbey v. Cox*, 222 F.3d 1040, 1043 (8th Cir. 2000) (holding that it was permissible for a reasonable finder of fact based on the evidence and on the finder of fact's assessment of witness credibility to conclude that a shooting was objectively unreasonable when a state trooper fatally shot a passenger who the trooper believed was potentially reaching for a weapon in a vehicle which had come to a stop when it hit a fence after a high-speed pursuit); *Eberhardinger v. City of York*, 782 F. App'x 180, 182 (3d Cir. 2019) (holding that a reasonable jury could find that an officer used deadly force to stop a fleeing suspect rather than out of fear of immediate personal harm when he fired four shots at the driver as the vehicle was passing him or had completely passed him). Indeed, "the record here does not conclusively establish the reasonableness of the officer[s'] actions." *Craighead v. Lee*, 399 F.3d 954, 963 (8th Cir. 2005). And "[w]here the record does not conclusively establish the lawfulness of an officer's use of force, summary judgment on the basis of qualified immunity is inappropriate." *Banks v. Hawkins*, 999 F.3d 521, 525 (8th Cir. 2021) (citing *Nance v. Sammis*, 586 F.3d 604, 612–13 (8th Cir. 2009)). Finally, in addition to answering whether the officers' actions were objectively reasonable, the jury must also determine whether it was Kulesa or Jones, or both, who effectuated the seizure on Savage.

    B.    <u>Municipal Liability Claim</u>

Summary judgment is granted on plaintiff's municipal liability claim. Plaintiff would be permitted to pursue her claims against the city if she could show that the city's policy,

widespread practice or custom, or deliberately indifferent training of its employees was the "moving force" behind the constitutional violation. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978); *see City of Canton v. Harris*, 489 U.S. 378, 387–88 (1989). Nothing in the record supports a municipal liability claim. Specifically, the city's policy did not "affirmatively sanction" unconstitutional action, and it instead relied on the discretion of the officers. *Moyle v. Anderson*, 571 F.3d 814, 818 (8th Cir. 2009); *see* Jacksonville Police Dep't Resp. to Resistance Pol'y, Doc. No. 25-14. Therefore, the city's lack of a de-escalation policy was constitutional, even if it did not conform with generally accepted law enforcement practices. Additionally, there is no evidence in the record showing a widespread practice or custom of excessive force within the city's police department or of deliberately indifferent training of officers. *See* Pl.'s Resp. Defs.' Mot. Summ. J. 10–12, Doc. No. 32; Defs.' Reply Pl.'s Resp. Defs.' Mot. Summ. J. 10, Doc. No. 37.

C. Survival Liability and Wrongful Death Claims

Summary judgment is granted in part and denied in part on plaintiff's survival liability and wrongful death claims.

Two causes of action may arise when a person's death is caused by the wrongful act of another. *See Meredith v. Buchman*, 101 F. Supp. 2d 764, 766 (E.D. Ark. 2000) (citing *Matthews v. Travelers Indem. Ins. Co.*, 432 S.W.2d 485, 487 (Ark. 1968)). "First, there is a cause of action for the estate under the survival statute, and, second, there is a cause of action for the statutory beneficiaries under the wrongful death statute." *Id.* Plaintiff is bringing a survival liability claim as the administratrix of Savage's estate, *see* Compl. ¶¶

102–07, and she is bringing a wrongful death claim as personal representative of Savage's statutory beneficiaries, *see id.* ¶¶ 108–15. Summary judgment is granted for the city and denied for Kulesa and Jones on plaintiff's survival liability and wrongful death claims for the same reasons that summary judgment is granted on plaintiff's municipal liability claim and denied on plaintiff's excessive force claim. *See Brown v. Pine Bluff Nursing Home*, 199 S.W.3d 45, 48 (Ark. 2004) (a wrongful death action is derivative in nature, and where the underlying claim is no longer preserved, the wrongful death action is barred as well); *Martin v. Hallum*, 374 S.W.3d 152, 158 (Ark. Ct. App. 2010) ("qualified immunity under Arkansas law is akin to its federal counterpart and rests on the same principles as federal law").

D. Motion to Strike

Defendants' motion to strike is denied because it appears that plaintiff complied with her expert disclosure obligations, or at the very least, any failure to meet her obligations was substantially justified. *See* Pl.'s Resp. Defs.' Mot. Strike 1–10, Doc. No. 39; *see also Firefighter's Inst. for Racial Equality ex rel. Anderson v. City of St. Louis*, 220 F.3d 898, 902 (8th Cir. 2000) (citing *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008–09 (8th Cir. 1998)) ("Unless the failure to meet [an expert report disclosure] deadline was either harmless or substantially justified, the court may sanction a party by excluding its evidence."); *Bliv, Inc. v. Charter Oak Fire Ins. Co.*, No. 4:22-CV-869-HEA, 2023 WL 8715762, at *2 (E.D. Mo. Dec. 18, 2023) (citation omitted) ("the Eighth Circuit has held that expert testimony should be liberally admitted"); *cf. Gillum v. United States*, 309 F. App'x 267, 270 (10th Cir. 2009) ("The parties to a litigation are not merely players in a game, trying to catch each other out.

Rather, litigation should promote the finding of the truth, and, wherever possible, the resolution of cases on their merits.").

## IV. CONCLUSION

For these reasons, defendants' motion for summary judgment is granted on plaintiff's municipal liability claim and denied on plaintiff's excessive force claim. Summary judgment is granted on plaintiff's survival liability and wrongful death claims against the city and denied on her claims against Kulesa and Jones. Defendants' motion to strike is denied. The clerk is directed to terminate the City of Jacksonville as a party.

IT IS SO ORDERED this 28th day of January, 2025.

_____
UNITED STATES DISTRICT JUDGE